**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHERRY MARNIECE RIDDICK,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-4652** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA,** *et al.*, | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**WEILHEIMER, J.**                                                          **OCTOBER 14 , 2025**

*Pro Se* Plaintiff Cherry Marniece Riddick brings this civil action pursuant to 42 U.S.C.

§ 1983, naming as Defendants Judge Cateria McCabe; Pamela R. Andreola, Esq.; Chief Deputy

Philadelphia City Solicitor Jonathan Houlon; Philadelphia Police Commissioner Kevin J. Bethel;

Kalifa King, BSN; the Pennsylvania Mental Health Corporation; and the Hospital of the

University of Pennsylvania ("HUP").  Riddick also seeks leave to proceed *in forma pauperis*.

For the following reasons, the Court will grant Riddick's Motion for Leave to Proceed *In Forma*

*Pauperis* (ECF No. 2), dismiss her Complaint (ECF No. 1) on statutory screening pursuant to 28

U.S.C. § 1915, and grant Riddick leave to file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

Riddick alleges that on January 16, 2025, the Philadelphia Department of Human

---

[1]  The facts set forth in this Memorandum are taken from Riddick's Complaint (ECF No. 1).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Additionally, the Court takes judicial notice of facts reflected in publicly available state court records, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), and may consider on statutory screening "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents," *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Services ("DHS") "unjustly and unlawfully decided to remove [Riddick]'s daughter from her custody without due process." (Compl. at 4.) On that date, Riddick was contacted from her daughter's school by an unnamed Philadelphia police officer, an unnamed "crisis worker," and the school nurse, Kalifa King, "to notify her that [her] daughter was being involuntarily committed for a mental health evaluation," and Riddick was asked to come to the school. (*Id.*) When Riddick arrived at the Mill Creek School, she encountered "six unknown Philadelphia police officers, a crisis worker," and King. (*Id.*) King informed Riddick that her daughter had been engaging in self-harm. (*Id.*) Riddick disputed that her daughter had been self-harming and noted that she and King "had a conversation earlier in the month about the same topic." (*Id.*) Riddick states that DHS made three earlier visits to her home between January 4 and January 15, 2025, without taking any immediate action. (*Id.*)

After she disputed King's report at the school, Riddick alleges that she herself "was unlawfully seized and involuntarily committed without any legal justification, warrant, or emergency certification under Pennsylvania's Mental Health Procedures Act" ("MHPA"), and that she "was not given the opportunity to examine or have access to her daughter," whom she witnessed "being brought out of the building in restraints." (*Id.*) Riddick was transported to the Cedar Crisis Response Center at HUP, and her daughter was transported to the Children's Hospital of Philadelphia's Crisis Response Center. (*Id.*) Riddick alleges that she was told by HUP staff that her daughter was going to be released to Riddick's sister, but in fact her daughter was taken into custody by DHS. (*Id.*)

Riddick was "informed by the nursing staff that she would be admitted" to HUP for psychiatric care, to which she "strongly objected," but then acquiesced after she was "threatened with force." (*Id.* at 5.) Riddick states that she "asked to see a judge, but was told that the judge

was only there on Thursday, and it was Friday when [she] was brought to [HUP]." (*Id.*) Riddick alleges that she "was held against her free will for 8 painful long horrid days . . . [,] forced to take medication, [and] interact 3 times a day by coercion and fear." (*Id.*) She states that she was "continuously terrified," "did not sleep much," and "cried almost every night." (*Id.*) Riddick states that she "never had any mental health history." (*Id.*)

Riddick further states that a hearing to place her daughter in shelter care was held on January 17, 2025, while Riddick was involuntarily committed, "without notice or opportunity for [Riddick] to be heard." (*Id.* at 6.) On January 31, 2025, Defendant Jonathan Houlon submitted a Dependency Petition, "demanding that [Riddick] appear in court." (*Id.*) Riddick does not describe any further state-court proceedings as to either her own involuntary commitment or her parental rights,[2] but states that on May 2, 2025, she "formally emailed the Commonwealth of Pennsylvania, Risk Management Division a Notice of Liability and Intent to Sue," in which she

---

[2] Riddick attached numerous exhibits to her Complaint, including medical records of her involuntary commitment; a police incident report from January 16, 2025; a letter from the Department dated January 4, 2025, concerning its investigation of a report alleging that her daughter was in need of protection; an Affidavit of Verbal Order of Protective Custody from the Philadelphia Court of Common Pleas Family Court Division, and a Recommendation for Shelter Care with findings of fact and law from the Family Court Juvenile Division, both dated January 16, 2025; the Dependency Petition filed by Defendant Houlon, dated January 31, 2025; and numerous letters labeled "character evidence." (*See generally* Compl. at 16-49.) These exhibits are discussed further below, but the Court notes that Riddick's submissions contain personally identifying information of herself and a minor, so the Clerk of Court will be directed to mark the Complaint and its attachments as case-participant-view only. **Riddick is reminded that documents filed in this case are public, not private**, and they are subject to the Federal Rules of Civil Procedure and Local Rules of this Court. In any future submissions, Riddick must redact or partially modify "[p]ersonal identifiers such as Social Security numbers, dates of birth, financial account numbers, and names of minor children." E.D. Pa. L. R. Civ. P. 5.1.3; *see also Ricketts v. Titusville Area Sch. Dist.*, No. 24-2569, --- F.4th ---, 2025 WL 2384058, at *1 (3d Cir. Aug. 18, 2025) ("[T]he Federal Rules of Civil Procedure, the Federal Rules of Appellate Procedure, and our Local Rules mandate that the names of all minor children be redacted or replaced by initials in all documents filed with the court, . . . and failure to comply with such rules may be grounds for sanctions." (citing Fed. R. Civ. P. 5.2(a)(3); Fed. R. App. P. 25(a)(5), 46(c); Third Circuit L.A.R. 113.12(a)(2))).

alleged violations of her "First, Fourth and Fifth Amendment protected rights."  (*Id.* at 7.)
Riddick further alleges that her daughter "has been placed in 4 different foster facilities" and
suffered abuse at one of the facilities, that she has only been able to see her daughter through
"weekly supervised visitation," and that she "has been forced to attend and perform
recommendations (sic) to satisfy [DHS] in order to regain custody."  (*Id.*)

Riddick asserts causes of action for "trespass," "defamation," and "kidnapping."  (*Id.*)
She also alleges that the various Defendants' conduct violated her rights under the First, Fourth,
Fifth, and Fourteenth Amendments.  (*Id.* at 11.)  She seeks orders from this Court returning her
daughter to her custody and enjoining any further custody proceedings, as well as damages
totaling $4.2 million.  (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Riddick leave to proceed *in forma pauperis* because it appears that
she is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C.
§ 1915(e)(2)(B)(ii) requires the Court to dismiss Riddick's Complaint if it fails to state a claim.
The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil
Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is,
whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief
that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted);
*Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will
accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the
Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts
sufficient to state a plausible claim."   *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021)
(cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197

(3d Cir. 2024). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Riddick is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

In that regard, a complaint may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019). Rule 8 requires a pleading to include a "short and plain statement showing that the pleader is entitled to relief," as well as a statement of the court's jurisdiction and a demand for the relief sought. Fed. R. Civ. P. 8(a). "This standard operates in tandem with that of Rule 10," which requires that a pleading contain a caption with the Court's name and the names of the parties, and that claims be listed in numbered paragraphs. *Fabian v. St. Mary' s Med. Ctr.*, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (citing Fed. R. Civ. P. 10). In determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by [the named] defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). "Naturally, a pleading that is so vague or ambiguous that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Id.* (cleaned up). The important consideration for the Court is whether, "a pro se

complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.    DISCUSSION

### A.    Constitutional Claims

Riddick asserts claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court.[3] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show

---

[3] The Court understands Riddick's claims about her parental rights to be brought on her own behalf, not on behalf of her daughter. This is because "a plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)). Courts have found specifically that parents lack standing to bring claims for their minor children and cannot pursue such claims while proceeding *pro se*. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("[A] non-lawyer appearing *pro se* [is] not entitled to play the role of attorney for his children in federal court."); *Chang v. Dep't of Servs. for Child., Youth, & their Fams., Div. of Fam. Servs.*, 790 F. App'x 435, 437-38 (3d Cir. 2019) (*per curiam*) (father lacked standing to address children's claims on appeal); *Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) ("[A] *pro se* Plaintiff does not have standing to assert any claims on behalf of her daughter.").

that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.    Personal Involvement

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

Throughout Riddick's Complaint, she frequently attributes actions to the Defendants collectively (referring to them as "Respondents") without specifying what each Defendant did or did not do that allegedly violated her rights.  (*See, e.g.*, Compl. at 6 ("Respondents used [Riddick]'s unlawful and unreviewed confinement to proceed with a shelter care hearing concerning her daughter's custody without providing prior notice, an opportunity to be heard, or legal representation, in violation of [Riddick]'s constitutional and statutory rights.").)  This is not a proper manner of pleading the personal involvement of any individual Defendant.  *See Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that a plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *Alston v. Little*, No. 24-1574, 2024 WL 3071064, at *3 (E.D. Pa. June 20, 2024) (concluding on screening that claims were not plausible where the plaintiff "continually refers collectively to 'Defendants,' rather than specifying what each particular named Defendant, identified by name or not, did or did not do that violated his rights").

7

Riddick also names individual Defendants in the caption of her Complaint without making any factual allegations that they were personally involved in the deprivation of her rights and, conversely, refers to numerous "Respondents" in the body of her Complaint who are not listed as Defendants in the caption. Specifically, Riddick states no facts about the actions of Defendants Judge McCabe, Attorney Andreola, Police Commissioner Bethel, or the Pennsylvania Mental Health Corporation, all of whom are named as Defendants in the caption of her Complaint; yet, in her factual allegations, refers to DHS, its agent Carl Saveur, the Philadelphia Police Department, unnamed police officers, doctors, and other unspecified medical staff as "Respondents," without naming any of them as Defendants in the caption, even as John or Jane Does. (*See generally* Compl. at 2-8.) Pleadings in a civil case must "identif[y] discrete defendants," and "the failure to list a defendant in the caption is not fatal where the allegations in the body of the complaint sufficiently identify the party." *Davis v. Mgmt.*, No. 21-3124, 2022 WL 1154766, at *2 (3d Cir. Apr. 19, 2022) (*per curiam*) (first quoting *Garrett*, 938 F.3d at 93; then citing *Yeseta v. Baima*, 837 F.2d 380, 383 (9th Cir. 1988)). Nonetheless, Riddick's Complaint fails to state a claim against any of these individuals and entities, because it either fails to allege their personal involvement or fails to present claims that discrete Defendants could identify and respond to on the merits in compliance with Federal Rules of Civil Procedure 8 and 10.[4] *See Garrett*, 938 F.3d at 94; *Fabian*, 2017 WL 3494219, at *3.

---

[4] At various points in her Complaint, Riddick also makes statements about the lack of a "contractual relationship" between herself and "Respondents," makes a point to refer to herself as "a woman," and demands "verification" of documents in open court with "wet ink" signatures. (Compl. at 5, 10.) The Court notes that sovereign-citizen arguments—for example, asserting that consent or contract between an individual and a government entity such as a court or the police is a prerequisite to governmental action, or that individuals have a legal identity separate from their physical body—have "'no conceivable validity in American law' and are patently frivolous." *United States v. Crawford*, No. 18-3149, 2022 WL 2712868, at *1 (3d Cir. July 13, 2022) (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)); *see also Ewans v.*

2.      **Immunity**

Riddick attempts to lodge claims against various Defendants who appear to have been involved in the dependency proceedings for her daughter.  Although Riddick does not provide any facts about Defendant Judge McCabe's involvement in her claims and therefore fails to state a claim to relief, to the extent that Riddick names Judge McCabe based on decisions made in the course of judicial proceedings, such claims are barred by judicial immunity.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  "Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes."  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (cleaned up).  Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  In addition, "injunctive relief shall not be granted in an action brought against a judicial officer for an act or omission taken in such officer's judicial capacity unless a declaratory decree was violated or declaratory relief was

---

*State of New Jersey*, No. 25-1368, 2025 WL 2630569, at *1 (3d Cir. Sept. 12, 2025) (affirming dismissal of sovereign-citizen complaint as frivolous under § 1915(e)(2)(B)(i)); *United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (explaining that "legal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity).

unavailable." *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*) (quoting § 1983) (cleaned up); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-98 (3d Cir. 2000) (observing that § 1983 "implicitly recognizes that declaratory relief is available in some circumstances, and then limits the availability of injunctive relief to circumstances in which declaratory relief is unavailable or inadequate").

To the extent Riddick names any court staff as Defendants, clerks of court and clerk's office employees enjoy absolute immunity and quasi-judicial immunity when performing duties required by statute or at the direction of judicial authority. *See e.g.*, *Lucarelli v. Norton*, No. 06-53, 2006 WL 709319, at *7 (M.D. Pa. Mar. 17, 2006); *Pokrandt v. Shields*, 773 F. Supp. 758, 765 (E.D. Pa. 1991) (noting that courts have held that clerks of court are entitled to immunity the same as judges); *DeFerro v. Coco*, 719 F. Supp. 379, 381 (E.D. Pa. 1989) (holding that absolute immunity extends to court clerk because he was a "nonjudicial officials whose activities are integrally related to the judicial process and involve the exercise of discretion comparable to that of a judge"); *Mercedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("In addition to the recognized immunity enjoyed by judicial and quasijudicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court directive is also immune from suit.").

As to Defendant Houlon, Riddick's lone allegation is that he filed a Dependency Petition in the Family Court. (Compl. at 6.)  Because her only claim against Houlon is based on his role in preparing materials for, or presenting matters to, the state court in the course of the dependency proceedings on behalf of the Commonwealth, Houlon is entitled to absolute immunity from damages from that claim. *See B.S. v. Somerset Cnty.*, 704 F.3d 250, 262-65 (3d Cir. 2013) (recognizing that "child welfare workers and attorneys who prosecute dependency

10

proceedings on behalf of the state are absolutely immune from suit for all of their actions in preparing for and prosecuting such dependency proceedings" (quoting *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 488-89 (3d Cir. 1997) (cleaned up))).

### 3. Commonwealth of Pennsylvania

Riddick also names the Commonwealth of Pennsylvania as a Defendant, but it is unclear from her pleading what relief she seeks from the Commonwealth or how the Commonwealth or its officials are involved in her claims. States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Accordingly, the claims for money damages Riddick seeks to assert against the Commonwealth of Pennsylvania may not proceed.

It is not clear if Riddick seeks any injunctive relief directed to the Commonwealth or any of its employees. State officials may be sued in their official capacities where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young,* 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Courts reason that injunctions against state officials actively violating federal laws are "necessary to vindicate the federal interest in assuring the supremacy of that law," despite the Constitution's prohibition against suits against the state. *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In *Koslow*, the United States Court of Appeals for the Third Circuit held that because "the Eleventh Amendment has

not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law," a plaintiff may sue a state official for ongoing violations of the Americans with Disabilities Act.  *Id.* at 178.

To avoid the bar of the Eleventh Amendment, however, "[t]he relief sought must be prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages."  *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 506 (3d Cir. 2001) (citing *Pennhurst State Sch. & Hosp.,* 465 U.S. at 102.)  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (citation omitted).  Thus, under the *Ex Parte Young* doctrine, a plaintiff may bring claims against state officials in their official capacity when they commit an "ongoing violation of federal law."  *Waterfront Comm'n of New York Harbor v. Governor of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020); *see also Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotations omitted)).

But the "legal fiction recognized in *Ex parte Young* is narrow in scope."  *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193 (3d Cir. Jan. 12, 2021).  "It requires [the Court] to conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and whether it seeks relief properly characterized as prospective."  *Id.* at 193-94 (internal quotations omitted).  A plaintiff bringing such a claim "must show that they have sustained or are in immediate danger of sustaining some direct injury

as the result of the challenged official conduct" that is real and immediate, as opposed to hypothetical or conjectural. *J. C. v. Ford*, 674 F. App'x 230, 232 (3d Cir. 2016) (*per curiam*) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  Also, the *Ex Parte Young* exception does not apply when the state is the real party in interest, *i.e.*, if a judgment would "expend itself on the public treasury or domain, or interfere with public administration" or if plaintiff seeks "specific performance of a State's contract."  *Waterfront Comm'n*, 961 F.3d at 238-39 (internal quotations omitted).  "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  *Ex parte Young*, 209 U.S. 123, 157 (1908); *Pepper v. Att'y Gen. Pa.*, No. 24-1261, 2024 WL 5102861, at *1 n.1 (3d Cir. Dec. 13, 2024) ("To qualify for [the *Ex Parte Young*] exception, however, the official must have some connection with the enforcement of the allegedly unconstitutional act." (quotations omitted)).

Riddick does not appear to name any Commonwealth official acting in their official capacity as a defendant or identify any injunctive relief directed to the Commonwealth or its officials.  Accordingly, she has failed to plead a plausible claim against the Commonwealth of Pennsylvania.

### 4.    Municipal Liability

Riddick names Philadelphia Police Commissioner Bethel as a Defendant but does not state whether she intended to sue Bethel in his official or individual capacity and makes no allegations as to his involvement in her claims.  To the extent that she intended to sue him in his official capacity, claims against City officials named in their official capacity are

indistinguishable from claims against the City.[5]  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978))).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  It is not enough, however, to allege the existence of a policy or custom.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Allegations that simply paraphrase the

---

[5]  Although, as discussed above, Riddick does not name DHS or the Philadelphia Police Department as Defendants in the caption of her Complaint, she does refer to DHS and the Police Department as "Respondents" in the body of her Complaint.  (*See, e.g.*, Compl. at 4, 8.)  City agencies are not suable entities under § 1983 because they do not have a separate legal existence. *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *see also Round v. City of Philadelphia*, No. 19-3513, 2020 WL 2098089, at *6 (E.D. Pa. May 1, 2020) (dismissing claims against the Philadelphia Police Department and DHS because they are not legal entities separate from the City of Philadelphia (citing, *inter alia*, *Gremo v. Karlin*, 363 F. Supp. 2d 771, 780-81 (E.D. Pa. 2005)))*; Bush v. City of Philadelphia Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (dismissing the Philadelphia Police Department as a matter of law on the same grounds).  Accordingly, to the extent that Riddick asserts claims against DHS or the Police Department, they are not plausible and will be dismissed.

standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable")).

To the extent that Riddick sues Bethel in his individual capacity, liability under § 1983 cannot be predicated on a *respondeat superior* basis, that is, simply because a defendant supervises other alleged wrongdoers. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, slip op. at 3-4 (3d. Cir. Nov. 28, 2022) (*per curiam*). There are, however, "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an

underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

Because Riddick (1) has not alleged any municipal policy or custom violated her rights; (2) has not pleaded a plausible underlying constitutional violation, as discussed below; and (3) makes no allegations of Defendant Bethel's policies or personal involvement or direction in the purported violation her rights, any claims against Bethel in either his official or individual capacity will be dismissed.

### 5.    State Action

As to Defendant King, the nurse at the Mill Creek School, the Court understands Riddick to assert constitutional claims based on King's reports to police of behavior by Riddick and her daughter. However, it is not clear from the allegations in the Complaint whether King was acting under color of state law. The Court notes that Mill Creek School appears to be a private institution operated by a nonprofit organization,[6] and Riddick does not plead any facts to suggest that King is a government employee. Whether a private entity is acting under color of state law—i.e., whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether

---

[6] *See The Mill Creek School at PHMC*, https://millcreek.phmc.org (last visited Sept. 24, 2025). It is unclear to the Court whether Riddick's named Defendant "Pennsylvania Mental Health Corporation" (*see, e.g.*, Compl. at 1) is a reference to the Public Health Management Corporation, the organization that operates Mill Creek School. *See* Organizational Chart, *Public Health Management Corporation*, https://www.phmc.org/site/images/PDF/PHMC_OrgChart-050725.pdf (last updated May 7, 2025).

the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The test imposed for determining whether a private party is exercising a traditionally exclusive public function is "a rigorous standard that is rarely satisfied for while many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 165-66 (3d Cir. 2001) (internal quotations and alterations omitted).

Riddick does not allege specific facts indicating that King or the Mill Creek School are state actors. *See id.* (holding that private school at which plaintiff was placed as a minor by the Department of Human Services was not a state actor). And King's reports to police about behavior by Riddick and her daughter do not alone constitute state action. *See Sous v. Timpone*, No. 15-7972, 2016 WL 2625325, at *4 (D.N.J. May 9, 2016) ("Filing a report or a civilian complaint does not transform a private citizen into a State actor." (citing *Boyce v. Eggers*, 513 F. Supp. 2d 139, 144-45 (D.N.J. 2007))). Participation in the related police investigation also does not render a private person a state actor for purposes of § 1983. *See Baack v. Rodgers*, No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014) (rejecting § 1983 false arrest claim

against a hospital and two of its employees who filed a police report regarding plaintiff's conduct because "reporting suspicious conduct to the police—or answering police questions about that conduct—without more, does not transform the Hospital Defendants into state actors" (citations omitted)); *Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."); *O'Neil v. Beck*, No. 04-2825, 2005 WL 2030319, at *2 (M.D. Pa. Aug. 4, 2005) (concluding that allegations that a private citizen filed a false police report and wanted to see the plaintiff arrested are "simply insufficient" to establish that the private citizen is a state actor for purposes of a claim brought pursuant to section 1983); *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 420 (E.D. Pa. 2020) ("Providing false information to the police—even deliberately—does not transform a private party into a state actor."), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).  Accordingly, Riddick fails to state a claim under § 1983 against King.

### 6.    Involuntary Commitment

Much of Riddick's Complaint centers on her own involuntary commitment, both her initial detention by unnamed Philadelphia police officers[7] and the subsequent eight days that she alleges she was held against her will by HUP and its staff pursuant to the MHPA.

The MHPA permits the involuntary commitment of persons who constitute a "clear and present danger" to themselves or others.  50 Pa. Stat. & Cons. Stat. § 7301(a).  Section 301 sets forth the factors that must be present to subject an individual to an emergency psychiatric evaluation, and states in relevant part:

---

[7]  As noted above, Riddick's Complaint fails to state a claim against Defendant Bethel, the Philadelphia Police Department, or any unnamed police officer.

> Whenever a person is severely mentally disabled and in need of immediate treatment, [s]he may be made subject to involuntary emergency examination and treatment. A person is severely mentally disabled when, as a result of mental illness, [her] capacity to exercise self-control, judgment and discretion in the conduct of [her] affairs and social relations or to care for [her] own personal needs is so lessened that [s]he poses a clear and present danger of harm to others or to h[er]self.

*Id.* The statute specifies circumstances that may constitute a " clear and present danger" to include, within the past 30 days, inflicting or attempting to inflict serious bodily harm on another; threats of harm to another with accompanying acts in furtherance of the threat; and an apparent inability to care for oneself and "to satisfy [the] need for nourishment, personal or medical care, shelter, or self-protection and safety," such that there is a reasonable probability of death or serious bodily injury in the absence of adequate treatment. *Id.* § 7301(b). The statute authorizes a police officer who personally observes a person engaging in such conduct to take the person to an approved facility for an emergency examination. *Id.* § 7302(a)(2). The person must be released within 120 hours unless "a certification for extended involuntary emergency treatment is filed under [§ 7303]." *Id.* § 7302(d).

The United States Court of Appeals for the Third Circuit has found that the initial seizure and involuntary commitment ordered pursuant to the MHPA satisfies both the Fourth Amendment and the Fourteenth Amendment, provided that the government officials reasonably determined that the individual posed a "clear and present danger" to themselves or others. *See Doby v. DeCrescenzo*, 171 F.3d 858, 871-72 (3d Cir. 1999). Short-term involuntary commitments under the MHPA, even without a hearing, generally do not violate procedural or substantive due process. *See Benn v. Universal Health Sys.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing, *inter alia*, *Doby*, 171 F.3d at 870, 871 n.4)).

As to her initial seizure, Riddick merely states in conclusory fashion that she was not having a mental health crisis and did not pose a danger to herself or others when she was initially

taken from Mill Creek School to HUP.  (*See* Compl. at 4-5, 7.)  Riddick provides no narrative description to indicate objectively unreasonable conduct by the unnamed police officers or by HUP and its staff.  The exhibits attached to Riddick's Complaint include medical records from HUP in which Riddick reported to the medical staff upon her admission that her home and daughter were possessed by demons and that the demons were responsible for her daughter's self-harm and damage to furniture and televisions.  (*See id.* at 17, 23-24.)

As to the continuation of her involuntary commitment, Riddick alleges in conclusory fashion that unspecified Defendants failed to act in accordance with the MHPA and that she did not receive a hearing to prolong her detention beyond the initial 120-hour period.  (*Id.* at 6.)  Because her pleading as to this point overlaps with other conclusory allegations regarding the dependency proceedings, the Court cannot discern a clear factual narrative, and bare allegations that MHPA procedures were violated are insufficient to state a claim under § 1983, which "does not provide a cause of action for violations of state statutes."  *Benn*, 371 F.3d at 174 (quoting *Brown v. Grabowski,* 922 F.2d 1097, 1113 (3d Cir. 1990)).  Moreover, the HUP records in Riddick's exhibits mention a "302 hearing" and a "303 completed," which are apparent references to MHPA proceedings.  (*Id.* at 22, 24.)

Taken together, because Riddick's conclusory allegations and other noted pleading deficiencies fail to "nudge[ her] claims across the line from conceivable to plausible, [her] complaint must be dismissed."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  However, the Court cannot definitively say that amendment of a due process claim as to Riddick's eight-day involuntary commitment would be futile, so she will be granted leave to amend.[8]

---

[8]  The Court also cannot determine on the basis of the allegations in Riddick's Complaint whether HUP or its staff were acting under color of state law in relation to Riddick's claims.  *See, e.g.*, *Hovis v. Cnty. of Lebanon*, No. 24-355, 2024 WL 4631830, at *10-12 (M.D. Pa. Oct.

### B.    State Law Claims

Because Riddick's federal claims will all be dismissed, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.[9]  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting

---

30, 2024) (noting that while the "Third Circuit has certainly held that 'persons who petition for the involuntary commitment of others are not state actors[ ]' simply because they are acting pursuant to the MHPA, . . . [s]ome courts in this circuit have found that a hospital that contracts with a county to treat involuntarily committed patients is a state actor for § 1983 purposes," and yet, "[o]n the other hand, courts have found that hospitals with state contracts to treat involuntarily committed patients are not state actors merely by virtue of having a contract with the state" (first quoting *Benn*, 371 F.3d at 173; then citing *Schorr v. Borough of Lemoyne*, 265 F.Supp.2d 488, 495 (M.D. Pa. 2003); and then collecting cases)).

[9]  It is not clear whether Riddick intended to lodge any state law claims.  For example, although she refers to "defamation"—a matter of state tort law—she cites a definition in the federal statute for "defamation," related to foreign judgments.  (*See* Compl. at 1 (citing 28 U.S.C. § 4101).)  She also makes references to a federal criminal statute for "kidnapping" and refers to "debt collectors."  (*See, e.g.*, *id.* at 3.)  None of these statements support a claim to relief.  *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (stating that a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other" (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))); *see also Brown v. City of Phila. Off. of Human Res.*, 735 F. App' x 55, 56 (3d Cir. 2018) (*per curiam*) (noting that criminal statutes generally do not provide a private cause of action); *Smith v. Comcast*, No. 20-5749, 2020 WL 6888570, at *1 n.2 (E.D. Pa. Nov. 24, 2020) (noting that 28 U.S.C. § 4101 is "irrelevant" unless a plaintiff "possess a judgment from a foreign jurisdiction").  However, to the extent that Riddick intended to bring any state law claims, the Court expresses no opinion on their merits, in the event that she chooses to pursue remedies in state court.

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  It is the plaintiff's burden to establish diversity of citizenship.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (The burden of establishing federal jurisdiction rests with the party asserting its existence.");  *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020) ("As the plaintiff, it is Jackson's burden to establish diversity of citizenship.").  Riddick does not allege the citizenship of the parties, but it appears from her pleading that both she and some—if not all—of the Defendants may be Pennsylvania citizens.  Accordingly, Riddick has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims she may intend to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Riddick leave to proceed *in forma pauperis* and dismiss her Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915. Mindful of Riddick's *pro se* status, the Court will grant her an opportunity to file an amended complaint and provide more factual details about the "who, what, where, when and why" of her claims.  *Davis v. IRS*, No. 21-4728, 2022 WL 407639, at *3 (E.D. Pa. Feb. 9, 2022) (citation omitted).

BY THE COURT:

_____

**GAIL A. WEILHEIMER, J.**